SO ORDERED: April 01, 2009.



**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:                                    )
                                          )
KENNETH RANDEL HARAUGHTY and    )          Case No. 08-05587-JKC-7A
IRMA ROBLES HARAUGHTY,          )
                                          )
        Debtors.                          )

### ORDER ON TRUSTEE'S MOTION FOR TURNOVER OF EARNED BUT UNPAID WAGES

This matter comes before the Court on the Chapter 7 trustee's (the "Trustee") Amended Motion for Turnover (the "Amended Motion") against Debtors Kenneth Randel Haraughty and Irma Robles Haraughty ("Debtors"). In the Amended Motion, the Trustee seeks turnover of wages that Kenneth Haraughty had earned but which had yet not been paid (the "Wages") as of the filing of petition. Debtors seek to exempt all of the Wages pursuant to Indiana's wage garnishment statute, Indiana Code § 24-4.5-5-105. Following a hearing on December 16, 2008, the Court ordered the parties to file briefs on their respective positions. Having reviewed those briefs, the Court now issues the following Order.

## Facts and Procedural History

Debtors filed a voluntary Chapter 7 petition on May 13, 2008. At the time of the filing, Mr. Haraughty was employed by the University of Phoenix. Mr. Haraughty is paid biweekly, usually around the 15th and 30th of each month, in arrears. As of the petition date, Mr. Haraughty was owed gross wages of $1,551.87 and net wages–after deductions for federal and state taxes, Social Security, Medicare–of $1,404.78.

On November 10, 2008, the Trustee moved for turnover of, among other things, "accounts receivable including wages," pursuant to 11 U.S.C. § 542. In response, Debtors filed an amended Schedule C, which claimed an exemption for 100% of the Wages pursuant to Indiana Code § 24-4.5-5-105(2). Debtors also objected to the Amended Motion, again claiming that the Wages were exempt. In support of their objection, Debtors cite to this Court's unpublished decision in *In re Bubb*, Case No. 02-05321-JKC-7 (Oct. 4, 2002).

On December 16, 2008, the Court conducted a hearing and, at its conclusion, asked the parties to file briefs on their respective positions.[1]

## Discussion and Decision

The dispositive issue in this case is whether the Wages are exempt property, in whole or in part, under § 522(b).[2] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b). This is a core proceeding pursuant to 28 U.S.C. § 1334(b).

---

[1] The dispositive issue in this case is currently under advisement in a number of other Chapter 7 bankruptcy cases, all involving the same trustee. Upon request, the Court allowed counsel for the debtor in one of those cases to file an *amicus curiae* brief in this case. The Court also has before it a brief filed, upon request, by counsel for the debtor in *In re Beaumont*, Case No. 08-12483-JKC-7A.

[2] There is no question that the Wages are property of the estate pursuant to 11 U.S.C. § 541(a) (the bankruptcy estate is compromised of "all legal or equitable interests of the debtor in property as of the commencement of the case.").

2

### 1.  The Statutory Framework

Section 522(b) of the Code provides that certain property of the estate may be exempted by the debtor.  In general, the debtor may elect between the exemptions provided by Code § 522(d) or under applicable nonbankruptcy law, both state and federal. 11 U.S.C. § 522(b)(1).  Pursuant to § 522(b)(2), however, states are empowered to "opt out" of the federal exemption scheme and explicitly prohibit their citizens from electing the exemptions provided by § 522(d).  A substantial majority of the states have exercised this option, and Indiana is among them.  *See* IND. CODE § 34-55-10-1 (stating that a "individual debtor domiciled in Indiana is not entitled to the federal exemptions as provided by § 522(d) . . . .").

Consistent with this scheme, Debtor contends that Indiana's wage garnishment statute, Indiana Code § 24-4.5-5.105, provides an exemption under Indiana law that is applicable in bankruptcy pursuant to § 522(b)(2).  Indiana Code § 24-4.5-5-105 provides in relevant part:

(1) For purposes of IC 24-4.5-5-101 through IC 24-4.5-5-108

> (a) "disposable earnings" means that part of the earnings of an individual, including wages, commissions, income, rents, or profits remaining after the deduction from those earnings of amounts required by law to be withheld; (b) "garnishment" means any legal or equitable proceedings through which the earnings of an individual are required to be withheld by a garnishee, by the individual debtor, or by any other person for the payment of a judgment; and (c) "support withholding" means that part of the earnings that are withheld from an individual for child support in accordance with the laws of this state.

(2) Except as provided in subsection (8), the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment to enforce the payment of one (1) or more judgments against him may not exceed:

> (a) twenty-five percent (25%) of his disposable earnings for that week; or (b) the amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage prescribed by 29 U.S.C. 206(a)(1) in effect at the time the earnings are payable;

3

whichever is less.  In the case of earnings for a pay period other than a week, the earnings shall be computed upon a multiple of the federal minimum hourly wage equivalent to thirty (30) times the federal minimum hourly wage as prescribed in this section.

(3) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment or support withholding to enforce any order for the support of any person shall not exceed:

(a) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), fifty percent (50%) of such individual's disposable earnings for that week; and
(b) where such individual is not supporting such a spouse or dependent child described in subdivision (a), sixty percent (60%) of such individual's disposable earnings for that week;

except that, with respect to the disposable earnings of any individual for any workweek, the fifty percent (50%) specified in subdivision (a) shall be deemed to be fifty-five percent (55%) and the sixty percent (60%) specified in subdivision (b) shall be deemed to be sixty-five percent (65%), if and to the extent that such earnings are subject to garnishment or support withholding to enforce a support order with respect to a period which is prior to the twelve (12) week period which ends with the beginning of such workweek.

(4) No court may make, execute, or enforce an order or process in violation of this section.

## 2.  The Trustee's Arguments

In objecting to the Debtors' claimed exemption, the Trustee makes essentially two arguments: (1) that Indiana Code § 24-4.5-5-105 does not afford an "exemption" under Indiana law and (2) that Indiana did not  intend for the statute to apply in bankruptcy.  The Court will discuss each of these arguments in turn.

### a.  Does Indiana Code § 24-4.5-5-105 afford an "exemption"?

The Trustee first contends that Indiana Code § 24-4.5-5-105 does not afford an "exemption," as that term is understood, because it does not shield "earnings" from all forms of process.  The

4

Trustee is correct that the term "exemption" "'conventionally connotes protection against *all* forms of process.'"  *See In re Geise*, 992 F.2d 651, 658 (7th Cir.1993) (quoting William T. Vukovich, *Debtors' Exemption Rights*, 62 GEO.L.J. 779, 816 (1974)) (italics added).  However, as explained by the court in *In re Mayer,* 388 B.R. 869 (Bankr.N.D.Ill.2008), in addressing Illinois' own wage garnishment statute:

> Unlike other assets that might be subject to levy, unpaid wages are neither in the possession of the debtor nor owned by the debtor.  Without a statute allowing a creditor to pursue the debtor's entitlement to such wages, they would be immune from collection. . . . [T]he nature of unpaid wages, as choses in action immune from . . . common law methods of satisfying judgments, makes the broader exemption language employed in other Illinois exemption provisions unnecessary.  The absence of references to assignment, attachment, levy, execution, and seizure is therefore no indication that the Illinois General Assembly intended unpaid wages to be subject to collection through these methods.

*Id*. at 873.  Similarly, under Indiana law, garnishment is the designated mechanism by which a judgment creditor may reach property in the hands of a third party, including the judgment debtor's employer.  *See* Ind. Trial Rule 69(E)(4); *Bowyer Escavating, Inc. v. Comm'r, Ind. Dept. of Envt'l Mgmt.*, 671 N.E.2d 180 (Ind.Ct.App.1996); *Lakeshore Bank & Trust Co. v. United Farm Bureau Mut. Ins. Co.*, 474 N.E.2d 1024 (Ind.Ct.App.1985).

In the Court's opinion, it would make little sense to protect unpaid wages from forms of process that are simply inapplicable.  Accordingly, the fact that Indiana Code § 24-4.5-5-105 does not protect unpaid earnings from all forms of process is not, in itself, dispositive, in determining whether the statute affords an exemption.

The Trustee also argues that Indiana Code § 24-4.5-5.105 does not afford an exemption because it shelters earnings only while they remain in an employer's hands; once the wages are paid, they lose their exempt status under the statute (although they may be exempt under another Indiana

statute).  While the Trustee is correct that the exemption provided by Indiana Code § 24-4.5-5-105 is only temporary, his argument ignores the fact that other well recognized exemptions under Indiana law–most notably workers' compensation and unemployment compensation–are also temporary in nature.  *See* IND. CODE § 22-4-33-3 (unemployment compensation) and *In re Weaver*, 93 B.R. 172 (N.D.Ind.1988) (holding that the exemption provided by IND. CODE § 22-3-2-17 for workers' compensation expired once such compensation is paid) (citing *Sohl v. Wainright Trust Co*., 76 Ind.App.198, 130 N.E.282 (1921) and *Faurote v. Carr*, 108 Ind.123, 9 N.E. 350 (1886) for the proposition that under Indiana law, money in the hands of the debtor stands on the same footing as any other money held by the debtor even if the money is derived from otherwise exempt funds.)).  Thus, the Court finds the temporary nature of the wage garnishment statute to be irrelevant in determining whether it provides an exemption.

The Trustee also insists that Indiana Code § 24-4.5-5-105 does not afford an exemption because it does not protect earned but unpaid wages in their entirety.  Contrary to the Trustee's argument, many of Indiana's well recognized exemptions protect only a portion of a given type of property or fund.  For instance, Indiana Code § 34-55-10-2 provides a $15,000 homestead exemption, a combined $8,000 exemption for nonresidential real estate and tangible personal property, and a $300 exemption for intangible personal property.  Property owned by the debtor in excess of these amounts is not exempt.  From these other examples, the Court concludes that a fund or type of property does not have been to be protected in its entirety to qualify as an exemption.

That conclusion is further supported by Indiana constitutional law.  As explained more fully below, Indiana's statutory exemptions derive from Article 1, § 22 of the Indiana Constitution.  That provision provides that "[t]he privilege of the debtor to enjoy the necessary comforts of life, shall

be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted."  Based on Indiana's constitutional mandate that exemptions be "reasonable," the Indiana Supreme Court has held that "statutes which create unlimited exemptions are inconsistent with the directive of Section 22 and the balanced policy underlying it."  *Matter of Zumbrun*, 626 N.E.2d 452, 455 (Ind.1993); *see also Citizens Nat'l Bank of Evansville v. Foster*, 668 N.E.2d 1236, 1240 (Ind. 1996) (reaffirming *Zumbrun*'s holding).  Given this authority, the Court simply cannot agree with the Trustee's argument that Indiana Code § 24-4.5-5-105 does not afford an exemption because it does not protect earnings in their entirety. Clearly, the Indiana Supreme Court would take issue with the statute if it did.

### b.  Did the Indiana legislature intend for Indiana Code § 24-4.5-5-105 to apply in bankruptcy?

In objecting to Debtors' claimed exemption, the Trustee argues that the Indiana legislature did not intend for Indiana Code § 24-4.5-5-105 to apply in bankruptcy.  To support that argument, the Trustee directs the Court to the Consumer Credit Protection Act (the "CCPA"), 15 U.S.C. § 1601 *et seq*. and to the United States Supreme Court's discussion of the CCPA in *Kokoszka v. Belford*, 417 U.C. 642, 94 S.Ct. 2431 (1974).  For the reasons stated below, the Court finds the Trustee's reliance on the CCPA and *Kokoszka* to be misplaced.

Passed in 1968, the CCPA shields at least 75% of wages from garnishment and further protects a debtor from being terminated by his employer because of a wage garnishment.  15 U.S.C. §§ 1672 and 1673.  The CCPA was passed due to Congressional concerns that predatory lending practices, along with disparate state garnishment laws, were the cause of a substantial role in large increases in consumer debt, as well as consumer bankruptcies.   Prior to the law's enactment:

[C]reditors could be aggressive in their lending because the law did not restrict or

7

> limit one powerful tool of recovery, namely garnishment. The garnishing of wages is an effective tool for recovery because it creates leverage and imposes a great hardship on the debtor and his or her family. As a result of the hardship, a debtor who is subject to a wage garnishment has only two choices, either pay the debt or file for bankruptcy. It also was common for a debtor subject to wage garnishment to consequently lose his or her job through termination by the employer. . . .

Jason C. Walker, *Wyoming's Statutory Exemption on Wage Garnishment: Should it Include Deposited Wages?*, 6 WYO. L. REV. 53, 59 (2006). Because its existing garnishment law was rendered obsolete by the CCPA, in 1968, Indiana passed the Uniform Consumer Credit Code (the "UCCC"), which contained the same restrictions on garnishment as provided by the CCPA.

Not long after the passage of both laws, the United States Supreme Court was asked to determine whether a federal tax refund was "property" under § 70a(5) of the Bankruptcy Act or whether a portion of the refund was exempt as "earnings" under the CCPA.[3] *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431 (1974). The Supreme Court concluded that the debtor's tax refund did not constitute "earnings" as defined under the CCPA, and, therefore, was property of the estate subject to administration. *Id.* at 651-52, 94 S.Ct. at 2436-37.

In language the Trustee finds informative to the dispositive issue presented in this case, the *Kokoszka* Court further stated:

> An examination of the legislative history of the [CCPA] makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of creditors. . . .

---

[3] In reading the *Koloszka* opinion, it is helpful to remember that the Bankruptcy Act of 1898, which was the law then in effect, took an entirely different approach from that of the present Code to the types of property interests includible in the bankruptcy estate. In order to become part of the estate, property had to be of a kind which the debtor "could by any means have transferred or which might have been levied upon and sold under judicial process against him." Bankruptcy Act of 1898, § 70. In interpreting the term "property" as used in § 70, courts had added a further requirement that the property interest not consist of future wages or their equivalent needed by the debtor for a fresh start. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

8

> In short, the [CCPA] sought to prevent consumers from entering bankruptcy in the first place. However, if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act.

*Id*. at 650-51, 94 S.Ct. at 2436.  Although this language was *dicta* and unnecessary to the Supreme Court's holding, other courts have relied upon it to conclude that Congress did not intend § 1673 of the CCPA to provide a federal exemption in bankruptcy.  *See e.g., In re Brissette*, 561 F.2d 779, 786 (9th Cir.1977); *Riendeau v. Canney (In re Riendeau)*, 293 B.R. 832, 838 (D.Vt.2002), *aff'd on other grounds* 336 F.3d 78 (2nd Cir.2003); *In re Lawrence*, 219 B.R. 786 (E.D.Tenn.1998).

With that background in mind, the Trustee argues:

> [B]oth the federal CCPA, and its Indiana spin-off, IC § 24-4.5-5-105, were enacted to impose limitations on the garnishment process, to brake overreaching by creditors, promote nationwide uniformity in the garnishment area, and reduce the need for resort to bankruptcy by otherwise aggrieved debtors.  There is absolutely *nothing* in the legislative history of either statute reflecting any intent by their respective draftsmen to create new federal or state exemption for debtors within the context of bankruptcy.

*Brief in Support of Trustee's Amended Motion for Turnover* at 15 (italics in the original).

The Court disagrees with the Trustee that Congress' intentions in passing the CCPA should be imputed to the Indiana legislature's passage of the UCCC, including Indiana Code § 24-4.5-5-105.  *See Forker v. Irish (In re Irish),* 311 B.R. 63, 66-7 (8th Cir. BAP 2004) (noting that an opt-out state could adopt the CCPA as a state exemption based on garnishment protection statutes regardless of the Congressional purpose for the CCPA and the Supreme Court's decision in *Kokoszka*); *In re Robinson,* 241 B.R. 447, 451 (9th Cir. BAP 1999) (holding that the Supreme Court's conclusions regarding Congressional intent with the CCPA has no bearing on the Oregon legislature's intent when enacting its state garnishment statute); *In re Urban,* 262 B.R. 865, 869-70 (Bankr.D.Kan.2001) (holding that "[w]hether or not Congress intended to create such an exemption [in bankruptcy] sheds

9

no light on whether the Kansas legislature sought to create an exemption when it borrowed . . . §
1673(a)'s language . . . ."). Furthermore, while the Court agrees that there is nothing in the
legislative history for Indiana Code § 24-4-5-105 explicitly stating that the limitations on
garnishment were intended to apply in bankruptcy, there is also nothing stating that they were *not*
intended to apply in bankruptcy.

In the absence of any explicit guidance from the Indiana legislature or within the statute
itself, the Court turns–as it did in *In re Bubb*–to the Indiana Supreme Court's decision in *Mims v.
Commercial Credit Corporation*, 261 Ind. 591, 307 N.E.2d 867 (Ind. 1974). In that case, the Court
was asked to decided whether the "UCCC garnishment *exemption*" repealed the resident household
exemption, Indiana Code § 34-3-28-1. *Id.* at 593 (italics added). In answering that question, the
Court recognized:

> Garnishment statutes in Indiana have constitutional underpinnings. Article 1,
> Section 22 [of the Indiana Constitution] provides that foundation: "The privilege
> of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome
> laws, exempting a reasonable amount of property from seizure or sale for the
> payment of any debt or liability hereafter contracted . . . ." It is not without
> significance that Article 1 enumerates the Bill of Rights. A debtor, in Indiana, has
> a constitutional right to have a reasonable amount of his or her property exempted
> from garnishment. Garnishment exemptions merely implement that right.

*Id*. at 595. In light of *Mims*, this Court simply cannot conclude that Indiana's wage garnishment
statute–a statute rooted not only in the CCPA and UCCC but in the Indiana Constitution–does not
apply in bankruptcy.

The Court further emphasizes that Indiana courts have repeatedly stated that the state's
exemptions laws are to be liberally construed so that they may fully effectuate their purpose:

> It has been uniformly held in this state that the constitutional provision relating to
> exemptions, and the statutes passed pursuant to the requirements thereof, were based
> upon considerations of public policy and humanity; and it was not alone for the

10

benefit of the debtor, but for his family also, that such laws were enacted, and the same should be liberally construed.

*Pomeroy v. Beach*, 149 Ind. 511, 49 N.E. 370 (Ind. 1898); *see also Martin v. Loula*, 208 Ind. 346, 195 N.E. 881 (Ind. 1935) ("It has been the policy of our laws for years, and it is within the spirit of section 22, art. 1 of our Constitution, that the unfortunate and needy shall be protected, and a construction most favorable to that class will be adopted by this court . . . ."); *Green v. Simon*, 46 N.E.2d 693 (Ind. App.1897) (citing cases). There is nothing in Indiana statutory or case law suggesting that bankruptcy somehow abrogates or renders unnecessary the protection afforded by Article 1, Section 22.

### 3. Conclusion

In keeping with the Indiana Constitution and the Indiana Supreme Court's stated policies, this Court is compelled to give Indiana Code § 24-4.5-5-105 its most liberal construction and apply it as an exemption in bankruptcy. The Court, therefore, concludes that Debtors are entitled to claim an exemption in earned but unpaid wages pursuant to Indiana Code § 24-4.5-5-105. Their attempt, however, to except 100% of the Wages is unavailing. Rather, Debtors are ordered to calculate their exemption pursuant to the limits set forth in Indiana Code § 24-4.5-5-105 and, unless the Trustee expresses an intention to declare this case to be a "no asset" case, turn over any non-exempt balance to the Trustee for administration.

### ###

Distribution:

Paul D. Gresk
John T. McManus
J. Andrew Sawin
UST

11